Kevin **MOYER** Appellee

v.

**Vicky L. GRESH and Gary A. Gresh Appellants.**

Superior Court of Pennsylvania.

Argued May 24, 2006.
Filed July 26, 2006.

Daniel I. Pottstown, for appellants.

Gregory S. Ghen, Pennsburg, for appellee.

BEFORE: FORD ELLIOTT, P.J., STEVENS and KELLY, JJ.

OPINION BY KELLY, J.:

¶ 1 Appellants, Vicky L. Gresh[1] and Gary A. Gresh, appeal from the order entered in the Berks County Court of Common Pleas, denying Appellants' motion to dismiss Appellee's complaint for custody, remanding for a custody conciliation, and dismissing Gary Gresh as a party. We affirm the dismissal of Gary Gresh and quash the remainder.

¶ 2 Appellants and Appellee, Kevin Moyer, are engaged in a custody dispute over sixteen-year-old M.M.[2] M.M. is the biological child of Appellants[3] but was raised for the first nine years of his life by Appellee, who was married to Appellant Vicky Gresh at the time. Appellee has been actively involved in M.M.'s life since his conception. He attended prenatal classes, accompanied Appellant Vicky Gresh on visits to the doctor, was present during M.M.'s birth, and is listed on M.M.'s birth certificate as his father. Appellee was the only father that M.M. knew during the first nine years of his life, was involved in M.M.'s schooling, and joined M.M. in recreational activities.

¶ 3 Appellee and Appellant Vicky Gresh separated in April of 1998 and subsequently divorced in 1999, with Appellant Vicky Gresh retaining primary physical custody of the children and Appellee retaining partial physical custody.[4] However Appellee continued to be involved with M.M.'s schooling, paid child support (never decreasing the amount of support even when his two older children reached the age of majority), bought M.M. clothes, and continued to carry medical insurance for M.M.[5] He has always had a good relationship with M.M. who believes that Appellee cares about him. M.M. discusses his problems with Appellee. When speaking to friends M.M. refers to Appellee as his father and Appellant Gary Gresh as his step father, although he uses "father" when in the company of either. M.M. has testified that he wants to live primarily with Appellee.

¶ 4 In contrast, for the first nine years of M.M.'s life Appellant Gary Gresh did nothing for M.M. except send sporadic birthday cards and Christmas presents, even though he was a family friend and M.M.'s godfather. During a three year period when Appellee and Appellant Vicky Gresh lived in Delaware, Appellant Gary Gresh never visited M.M., and only talked to him by telephone a few times. It was not until 1998, after Appellants obtained the results of the DNA parentage tests,

1. Vicky L. Gresh is referred to as "Vicki L. Gresh" in the trial court opinion, however she signs her name "Vicky."

2. M.M. was born on October 9, 1989. Another child, W.M., is also involved in the custody dispute, but Appellee's standing with regard to W.M. has not been challenged. Appellee and Appellant Vicky Gresh also have two older children who have reached the age of majority.

3. Appellants and M.M. underwent DNA parentage tests which show a 99.93% probability that Appellant Gary Gresh is M.M.'s biological father.

4. The custody order does not pertain to M.M., although he has primarily lived with Appellants since the separation and has accompanied his siblings during Appellee's periods of partial custody.

5. Appellants have tried to limit Appellee's involvement in M.M.'s life. After Appellee filed for primary custody, Appellant Vicky Gresh announced that he was no longer permitted to contact M.M.'s school (even though M.M. testified that Appellants themselves do not attend parent/teacher conferences on his behalf). In addition, she requested that Appellee take M.M. off his health insurance. Finally, although Appellant Vicky Gresh continued to cash Appellee's child support checks (intended for M.M. and W.M.), after Appellee filed for primary custody she began to cross out M.M.'s name before cashing the checks.

that Appellants informed M.M. (against Appellee's wishes) that Appellant Gary Gresh was his biological father.[6] Appellants have lived together since November of 1998 and have been married since July of 2000; M.M. has lived primarily with them during this time. Since 2000 Appellant Gary Gresh has claimed M.M. as a dependent, now carries health insurance for M.M., and takes him to doctor appointments. He indicates that he loves M.M. very much, and does not want Appellee to have any custodial rights to M.M. However M.M. believes that it is too late for Appellant Gary Gresh to act as his father.

¶ 5 In March of 2005 Appellee filed a complaint seeking primary physical custody of M.M. Appellants subsequently filed a motion to dismiss the complaint for lack of standing, stating that Appellee cannot stand *in loco parentis* to M.M. when M.M.'s biological father, Appellant Gary Gresh, has assumed all parental rights and responsibilities. The trial court denied Appellants' motion and remanded the case to the custody master to schedule a custody conciliation. The court also dismissed Appellant Gary Gresh as a party to the action.

¶ 6 Appellants timely appealed, raising three issues for our review. First, Appellants contest Appellant Gary Gresh's dismissal as a party to the custody action on grounds that he is M.M.'s biological father, that Appellants and M.M. compose an intact family, and that Appellant Gary Gresh has met the responsibilities of fatherhood. Next, Appellants raise the issue of whether Appellee should be considered M.M.'s legal father when he has acknowledged for the seven years that he has been divorced

from Appellant Vicky Gresh that M.M. is not his biological child, and M.M. knows he is not Appellee's biological child. They argue that the trial court erred in failing to give more weight to the results of the DNA parentage tests and the acknowledgment by all parties that Appellant Gary Gresh is M.M.'s biological father. They further argue that the trial court erred in applying the doctrine of paternity by estoppel, and claim that Appellant Gary Gresh is an indispensable party to the action. Finally, Appellants raise the issue of whether they, as an intact family, have a constitutional right to raise M.M. without intervention from Appellee or the state. They argue that the trial court erred by intervening in an intact family unit without a compelling reason. Appellants contend that this Court should reverse the trial court's decision and find that Appellee is not M.M.'s legal father. We disagree.

■ ¶ 7 Preliminarily we note that since the order entered by the trial court covers two distinct matters, for purposes of this appeal we will treat it as two separate orders: one order dismissing Appellant Gary Gresh as a party and another denying Appellants' motion to dismiss Appellee's complaint for custody and remanding for a custody conciliation. When treated as a separate order, the dismissal of Appellant Gary Gresh is a final appealable order since he was put out of court. *See Grant v. Blaine,* 582 Pa. 1, 868 A.2d 400 (2005).

■ ¶ 8 First we address the trial court's application of paternity by estoppel in its dismissal of Appellant Gary Gresh.

---

6. Appellee contends that he learned that he is not M.M.'s biological father after the results of the DNA parentage tests. However Appellant Gary Gresh claims that he told Appellee that he is M.M.'s father at the hospital the day that M.M. was born, while Appellant Vicky Gresh testified that Appellee knew from the time that she became pregnant with M.M. that Appellant Gary Gresh is M.M.'s biological father, and that all three of them had discussed the situation prior to M.M.'s birth.

"Under the doctrine of paternity by estoppel, an individual may be 'estopped from challenging paternity where that person has by his or her conduct accepted a given person as the father of the child.'" *Bahl v. Lambert Farms, Inc.*, 572 Pa. 675, 819 A.2d 534, 539 (2003) (quoting *Jones v. Trojak*, 535 Pa. 95, 634 A.2d 201, 206 (1993)). The doctrine is designed to protect the best interests of minor children by allowing them to "be secure in knowing who their parents are." *Bahl, supra.* It is grounded in a fairness principle that those who mislead a child as to the identity of his natural father cannot then turn around and disprove their own fiction to the detriment of the child. *Id.* at 541 (citing *Freedman v. McCandless*, 539 Pa. 584, 654 A.2d 529, 533 (1995), *subsequent appeal denied*, 559 Pa. 667, 739 A.2d 166 (1999)). Where estoppel is operative, "blood tests may be irrelevant, for the law will not permit a person in these situations to challenge the status which he or she has previously accepted." *T.L.F. v. D.W.T.*, 796 A.2d 358, 363 (Pa.Super.2002) (quoting *Jones, supra*).

¶ 9 Here, the trial court dismissed Appellant Gary Gresh after determining that Appellee is M.M.'s legal father under the doctrine of paternity by estoppel. The court based this determination on the parties' testimony, much of which was contradictory. It found Appellee more credible than Appellants, and accepted Appellee's testimony as to when he learned that he is not M.M.'s biological father. (*See* Trial Court Opinion, filed November 17, 2005, at 5). "[O]n issues of credibility and weight of the evidence, we defer to the findings of the trial judge who has had the opportunity to observe the proceedings and demeanor of the witnesses." *Billhime v. Billhime*, 869 A.2d 1031, 1036 (Pa.Super.2005) (citing *Dranko v. Dranko*, 824 A.2d 1215, 1219 (Pa.Super.2003)). Therefore this Court will defer to the trial court's finding of credibility. *See id.*

¶ 10 The trial court found that Appellee supported M.M. emotionally, psychologically, and financially for the majority of M.M.'s life and continued to support M.M. even after he learned that Appellant Gary Gresh is M.M.'s biological father. In contrast, Appellant Gary Gresh voluntarily relinquished his parental rights and duties to Appellee during the first nine years of M.M.'s life, and allowed Appellee to continue supporting M.M. when M.M. was living with Appellants. Given these findings it was reasonable to conclude that Appellant Gary Gresh accepted Appellee as M.M.'s father and should thus be estopped from challenging his paternity.[7] *See Bahl, supra* at 539. The results of the DNA parentage tests are therefore irrelevant, as is the acknowledgment of Appellant Gary Gresh's biological paternity by all parties involved. *See T.L.F., supra.* Without a paternity claim, Appellant Gary Gresh's

7. Equitable estoppel has been similarly applied in adoption cases. In *In re Adoption of S.A.J.*, 575 Pa. 624, 838 A.2d 616, 625 (2003), our Supreme Court held that the putative father was equitably estopped from asserting paternity when he was voluntarily absent from the child's life for twelve years and the mother and her husband had assumed responsibility for rearing and supporting the child. The Court noted that "[t]he parental obligation 'is a positive duty and requires affirmative performance.'" *Id.* at 624, 838 A.2d 616 (quoting *Petition of Lutheran Children and Family Service of Eastern Pennsylvania*, 456 Pa. 429, 321 A.2d 618, 620 (1974)). Likewise, in *In re M.J.S.*, 206 Pa.Super. 154, 903 A.2d 1, 11 (2006), this Court held that the putative father was equitably estopped from asserting paternity when he failed to take any action to assert his paternity and did not become even tangentially involved in the child's life until she was five years old. We stated that "[w]e cannot allow this child's life to be disrupted when [the putative father's] own failure to act resulted in the present situation." *Id.*

interests are adequately represented by Appellant Vicky Gresh, thus he is not an indispensable party.

¶ 11 The application of paternity by estoppel here is in accord with the decision in *J.C. v. J.S.*, 826 A.2d 1 (Pa.Super.2003), *appeal denied*, 576 Pa. 724, 841 A.2d 531 (2003), in which this Court applied the doctrine to the mother's former husband even though he was not the child's biological father. As in the instant case, for many years the mother led her former husband to believe that he was the child's father. *Id.* at 3. However, since the former husband continued to act as the child's father and continued to support the child even after learning that he was not the child's biological father, paternity by estoppel was operative. *Id.* at 5.

¶ 12 Finally, this result is also in accord with M.M.'s best interests. *See Bahl, supra* at 539. M.M. and Appellee have a close relationship and Appellee has supported M.M. since his conception. M.M. considers Appellee to be his father and wishes to live primarily with him. Since the facts show that Appellee is willing to care for M.M. and capable of doing so, a finding of paternity by estoppel is in M.M.'s best interests. Accordingly the trial court was correct in dismissing Appellant Gary Gresh as a party to the custody action.

 ¶ 13 Next we must determine whether the remainder of the order is properly before us.

> Under Pennsylvania law, an appeal may be taken from: (1) a final order or an order certified by the trial court as a final order (Pa.R.A.P.341); (2) an interlocutory order as of right (Pa.R.A.P. 311); (3) an interlocutory order by permission (Pa.R.A.P. 312, 1311; 42 Pa. C.S.A. § 702(b)); or (4) a collateral order (Pa.R.A.P.313). The question of the appealability of an order goes directly to

the jurisdiction of the Court asked to review the order.

*Beltran v. Piersody*, 748 A.2d 715, 717 (Pa.Super.2000) (quoting *Pace v. Thomas Jefferson Univ. Hosp.*, 717 A.2d 539, 540 (Pa.Super.1998)). "A final order is any order that: (1) disposes of all claims and of all parties; or (2) any order that is expressly defined as a final order by statute; or (3) any order entered as a final order pursuant to subdivision (c) of this rule." Pa.R.A.P. 341(b). Subdivision (c) allows the trial court, in multi-claim or multi-party actions, to enter a final order as to one or more but fewer than all of the claims and parties upon an express determination that an immediate appeal would facilitate resolution of the entire case, and also allows a party to apply for a determination of finality. Pa.R.A.P. 341(c). Furthermore, a custody order is considered final and appealable only if it is both: (1) entered after the court has completed its hearings on the merits; and (2) intended by the court to constitute a complete resolution of the custody claims pending between the parties. *G.B. v. M.M.B.*, 448 Pa.Super. 133, 670 A.2d 714, 720 (1996).

 ¶ 14 Here, the order denying Appellants' motion to dismiss Appellee's complaint for custody and remanding for a custody conciliation does not dispose of all claims since it does not decide the paramount issue of custody, and in fact specifically directs that further proceedings on the issue of custody be scheduled. *See* Pa.R.A.P. 341(b)(1). In addition, it is not expressly defined as a final order by statute, the trial court did not expressly determine that an immediate appeal would facilitate resolution of the entire case, and Appellants did not apply for a determination of finality. *See* Pa.R.A.P. 341(b)(2), (3); *see also* Pa.R.A.P. 341(c). Thus, the order denying Appellants' motion to dismiss Appellee's complaint for custody and

remanding for a custody conciliation is not a final order pursuant to Pa.R.A.P. 341, and is not properly before us on appeal. *See Beltran, supra* at 717.

¶ 15 Order affirmed in part, quashed in part.