J-A22022-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| Y.A. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| Z.L. | |
| Appellant | No. 504 MDA 2015 |

Appeal from the Order Entered February 25, 2015
In the Court of Common Pleas of Lancaster County
Civil Division at No(s): CI-14-06413

BEFORE:  BOWES, J., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY JENKINS, J.:                **FILED AUGUST 31, 2015**

Appellant Z.L. ("Mother") appeals from the order entered February 25, 2015 in the Lancaster County Court of Common Pleas, which denied her relocation petition.  We quash this appeal as interlocutory.

The trial court sets forth the relevant facts and procedural history of this appeal as follows:

> [Y.A. ("Father")] and [Mother] are former romantic partners that have one child together, [Y.A.] (DOB:[2]/14) ("Child").  The parties became a couple when they were both young and Mother began living with Father while she was still in high school.  The parties began living with each other in December 2012, living with Father's family for a

_____

[*] Retired Senior Judge assigned to the Superior Court.

month and then Mother's family for a month[1] before they were able to get their own place in February 2013.

Mother became pregnant shortly after they moved out on their own. Father then lost his job and they decided to move to Lackawanna County because both Mother and Father were able to find full-time employment in the Scranton area with the help of Mother's step-father's niece. Prior to [Child's] birth, Mother stopped working. Both parties testified that this loss of income created a financial struggle for the family. Mother blames Father for struggling to pay the household bills; however, Father testified that he worked long hours at his job, but could not make ends meet.

Mother had [Child] in February 2014. The relationship continued to deteriorate and Mother left Father in March 2014, filed a [protection from abuse ("PFA")] action in Lackawanna County, and went to go live in a women's shelter in Lackawanna County. Mother testified that she didn't immediately go back to her family's house in Lancaster County because she wanted to try to make it on her own without them. Mother lived in the women's shelter from March 2014 until May 2014, but eventually, Mother did return to Lancaster County to live with her family.

Both parties introduced evidence that they believe the other party is mentally unstable. Both parties agree that Mother and Father's relationship deteriorated greatly after they moved to Scranton. Mother testified that Father was mentally and physically abusive when they were in a relationship together and that he threatened to commit suicide after Mother filed the PFA. Father elicited testimony from Mother regarding her mental health diagnoses when she was a teenager. Mother testified that the mental health diagnoses are no longer an issue because she received counselling at that time and is an adult and more mature now.

---

[1] The transcript reflects that the parties lived with Mother's family first.

Mother alleged that the final incident leading up to the PFA occurred as follows:

> The last argument that we had, he came from work, he was upset already. And I was mad at him because he was not leaving the bathroom clean. He started throwing diapers to me. And by that time, I have my baby with me on the bed so the diaper was hitting her, too. The diaper wasn't clean so I started throwing the diapers, I tried to, like, cover myself and I kick him by accident. And he start punching me on my legs. After that, he wanted to take the baby. He didn't want me to, like, have my baby. He was, like, oh, I want to be with my baby. I'm like, no, you're being really aggressive right now. I don't want you with the baby. And he started pulling my hair and grabbing my arm, and I have my baby in my arms to like to let me go with the baby. He just wanted to use her to keep me there. I did, you know what, you can have her. I got into the other bathroom of the house and I called the police. And the police ask him to stay out for the night. He came back, and when he left to work, I called a program that is for women who have been abused and they took me there and I spent there, like, a month.

A final PFA was entered against Father by agreement and without admission. Father sent text messages to Mother in violation of the terms of the April 9, 2014 PFA and was subsequently convicted of an ICC[2] on May 7, 2014. Father's conviction resulted in being placed on probation for six months in addition to other conditions, such as undergoing a psychological evaluation and attending domestic violence courses. Father began his counseling services in January 2015, directly after his release from incarceration.

In the final PFA dated May 7, 2014, Mother agreed that Father could have supervised physical custody of [Child]

---

[2] Indirect criminal contempt.

for three months and then after three months Father would have unsupervised custody of [Child] every other weekend. Father never started the three months of supervised custody. Father testified that he was never able to exercise supervised custody of [Child] during those first three months because Mother would not do her part to coordinate with the supervisor. Mother maintains that she did her part and that it was Father that did not coordinate with [the supervised visitation center] for supervised custody.

Mother maintains that Father was willfully absent from [Child's] life. Father maintains that he was precluded from seeing his daughter because of terms of the PFA, Mother's lack of coordination with the [supervised visitation center] supervisor, and his subsequent incarceration for approximately six months for violating his probation. The court allowed Mother to temporarily relocate to Florida in November 2014, pending this relocation hearing; at that time, Father was incarcerated in Pennsylvania. Mother testified that she wants [Child] to have a meaningful relationship with Father, but seeks to relocate to Florida from Pennsylvania. Mother testified that traveling to Pennsylvania on a regular basis to allow Father to exercise periods of custody would be a great financial hardship for her. Similarly, Father testified that traveling to Florida would be a great financial hardship for him.

Mother testified that living in Florida is better for her and [Child] because Mother was able to secure two jobs in under a month after moving to Florida-the first being a luggage handler at Disney Resorts and the second [is] a part-time position at Golden Corral. Mother testified that she struggled to obtain and/or maintain comparable employment in Lancaster County. Prior to moving to Florida, Mother worked as a housekeeper in a hospital. In Florida, Mother lives with [Child], maternal grandmother, maternal step-grandfather, and Mother's younger brother.[3] Both maternal grandmother and step-

_____

[3] Mother's parents and ten-year-old brother decided to move to Florida because of the climate and maternal grandmother's health. They moved to

*(Footnote Continued Next Page)*

- 4 -

grandfather receive social security disability and do not work outside of the home.

Now that Father has been released from incarceration, he is working to regain employment and get back on his feet. Father was unable to pay support for [Child] while he was incarcerated, but will be able to now. Father currently lives with his father and his father's girlfriend. Father has relatives in Lancaster County, none of which have had the opportunity to form a relationship with [Child].

Prior to the start of the relocation hearing that took place on February 24, 2015, counsel for both parties met with the court and discussed what the scope of the hearing [would] be. Specifically, counsel for the parties stated that they were not in a position to present evidence for the court to consider under a full sixteen factor, 23 Pa.C.S. § 5328(a) best interests analysis. The parties agreed before the start of the hearing that they would like the custody aspect of this matter to go forward to a custody conference, which the court scheduled in its February 25, 2015 Order.

Trial Court 1925(a) Opinion, filed 4/17/15, at 3-6.

On February 25, 2015, the court denied Mother's relocation petition. On March 18, 2015, Mother filed a timely notice of appeal and a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2) and (b).

Mother raises the following issues for our review:

_(Footnote Continued)_ ────────────

Pennsylvania from Puerto Rico in 2012. Mother is twenty years old. All of their extended family is in Florida, and Mother testified that everyone speaks Spanish there, which made it much easier for her to get a job. She also testified that she does not have any family in Pennsylvania to help with childcare.

I.  IS THE TRIAL COURT ORDER OF FEBRUARY 25, 2015, A FINAL ORDER THEREBY GRANTING THE SUPERIOR COURT JURISDICTION OF THE APPEAL?

II.  DID THE TRIAL COURT ABUSE ITS DISCRETION OR COMMIT AN ERROR OF LAW WHEN IT FAILED TO CONSIDER THE BEST INTEREST FACTORS AS REQUIRED BY THE CHILD CUSTODY ACT, 23 PA.C.S. § 5328(A) IN ITS CUSTODY ORDER?

III.  DID THE TRIAL COURT ABUSE ITS DISCRETION OR COMMIT AN ERROR OF LAW WHEN IT FAILED TO CONSIDER ALL OF THE BEST INTEREST FACTORS UNDER SECTION 5337(H) AND IMPROPERLY CONSIDERED ONE FACTOR TO THE EXCLUSION OF ALL OTHERS IN ITS DETERMINATION TO DENY MOTHER'S REQUEST TO RELOCATE TO ORLANDO, FLORIDA[?]

IV.  DID THE TRIAL COURT ABUSE ITS DISCRETION OR COMMIT AN ERROR OF LAW WHEN IT FOUND FATHER POSES NO RISK OF HARM DESPITE THE LACK OF ANY EVIDENCE THAT WOULD REBUT FATHER'S PRESUMED RISK OF HARM BASED ON HIS CRIMINAL GUILTY PLEA FOR AN INDIRECT CRIMINAL CONTEMPT PURSUANT TO 23 PA.C.S. § 5329?

V.  DID THE TRIAL COURT ABUSE ITS DISCRETION OR COMMIT AN ERROR OF LAW WHEN IT ENTERED AN ORDER FOR FATHER TO HAVE SUPERVISED PRIMARY CUSTODY, A FORM OF CUSTODY NOT CONTEMPLATED UNDER THE CUSTODY ACT?

Mother's Brief at 9-10.

We must first address the appealability of the trial court order as it directly implicates the jurisdiction of this Court. The trial court contends Mother's appeal is improper as she seeks to appeal the denial of a relocation request prior to the entry of an appealable custody order. The opinion

states the court scheduled a custody conference for April 20, 2015. The docket does not reflect that such a custody conference has occurred.

On April 2, 2015, this Court ordered Mother to show cause as to why this appeal should not be quashed as having been taken from an order that is interlocutory and not appealable. On April 9, 2015, Mother responded to the notice. On April 20, 2015 this Court discharged the order to show cause, but warned Mother that the "merits panel may revisit the issue and may find that the appeal is defective. Therefore, [Mother] should be prepared to address the issue at oral argument if the panel or one of the parties raises the issue at that time". Order, filed 4/20/15, 504 MDA 2015.

Mother argues that the trial court clearly entered an order denying her relocation petition after conducting a full hearing on the merits. She claims the court granted her primary physical custody if she moved back to Lancaster and concludes that the trial court's order denying her relocation petition is appealable. We disagree.

Primarily, we observe:

> "The appealability of an order directly implicates the jurisdiction of the court asked to review the order." ***Estate of Considine v. Wachovia Bank***, 966 A.2d 1148, 1151 (Pa.Super.2009). "[T]his Court has the power to inquire at any time, *sua sponte,* whether an order is appealable." ***Id.; Stanton v. Lackawanna Energy, Ltd.,*** 915 A.2d 668, 673 (Pa.Super.2007). Pennsylvania law makes clear:
>
> > [A]n appeal may be taken from: (1) a final order or an order certified as a final order (Pa.R.A.P. 341); (2) an interlocutory order as of right (Pa.R.A.P. 311);

- 7 -

(3) an interlocutory order by permission (Pa.R.A.P. 312, 1311, 42 Pa.C.S.A. § 702(b)); or (4) a collateral order (Pa.R.A.P. 313).

*Stahl v. Redcay*, 897 A.2d 478, 485 (Pa.Super.2006), *appeal denied,* 918 A.2d 747 (Pa.2007) (quoting *Pace v. Thomas Jefferson University Hosp.,* 717 A.2d 539, 540 (Pa.Super.1998) (internal citations omitted)).

*In re Estate of Cella*, 12 A.3d 374, 377-78 ([Pa.Super.]2010).

Pennsylvania Rule of Appellate Procedure 341 provides, in relevant part:

**Rule 341. Final Orders; Generally**

**(a) General rule.** Except as prescribed in subdivisions (d), and (e) of this rule, an appeal may be taken as of right from any final order of an administrative agency or lower court.

**(b) Definition of final order.** A final order is any order that:

(1) disposes of all claims and of all parties; or

(2) is expressly defined as a final order by statute; or

(3) is entered as a final order pursuant to subdivision (c) of this rule.

**(c) Determination of finality.** When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim ... the trial court ... may enter a final order as to one or more but fewer than all of the claims ... only upon an express determination that an immediate appeal would facilitate resolution of the entire case. Such an order becomes appealable when entered. In the absence of such a determination and entry of a final order, any order ... that adjudicates

fewer than all the claims ... shall not constitute a final order. ...

Pa.R.A.P. 341(a)–(c).

We will only consider a custody order as final and appealable if it is both "(1) entered after the court has completed its hearings on the merits; and (2) intended by the court to constitute a complete resolution of the custody claims pending between the parties." *Moyer v. Gresh*, 904 A.2d 958, 963 (2006) (quoting *G.B. v. M.M.B.*, 670 A.2d 714, 720 (Pa.Super.1996)).

"42 Pa.C.S. § 702 permits this Court in its discretion to entertain an appeal of an interlocutory order if it is satisfied with the trial court's certification that there is a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter." *Kensey v. Kensey*, 877 A.2d 1284, 1289 (Pa.Super.2005).

Here, the court's order provides, in pertinent part:

> 5. [Mother's] proposed relocation to Orlando, Florida is hereby DENIED. The Court shall issue an Opinion and Order fully addressing the relocation and risk of harm issues within fifteen (15) days of the date of this Order.
>
> 6. Within thirty (30) days, Mother shall return [Child] to Lancaster County. Pending the custody conference, custody of [Child] after she is returned to Lancaster County shall be as follows:
>
> > a. Mother may remain with [Child] after she is returned to Lancaster County and retain primary physical custody of [Child] with Father to have partial physical custody of

[Child] to be supervised by Jesus Aponte or Sally Gonzalez as the parties agree.

b. If Mother chooses to remain in Florida, then Father, supervised by Jesus Aponte or Sally Gonzalez, shall have primary custody of [Child] with Mother to have partial physical custody of [Child] as the parties agree.

7. The Court finds that Father is not a risk of harm to [Child] so long as he completes the conditions of his probation and, until such conditions are completed, so long as his custody of [Child] is supervised by Jesus Aponte or Sally Gonzalez.

8. A custody conference is hereby scheduled in this matter for April 20, 2015 at 3:30 p.m. in conference room # 302 before custody conference officer, Jeanne Millhouse.

February 25, 2015 Order at 2-3.

At the conclusion of the relocation hearing, the court stated:

That will conclude the aspect of the relocation hearing. I will review all of the evidence and I will have a decision out as soon as possible so that there's some certainty with both of the parties. ***I'm not going to make any final custody decisions***… I will direct that that go to a conference in some form or another, whether it's from Florida or up here. So that would be the next stage in anything that were to happen with custody. I will make the determinations with respect to risk of harm that are still outstanding, so that the only thing that will be left will be custody schedules.

N.T., 2/24/15 at 157 (emphasis added).

In this case, there is no trial court certification pursuant to 42 Pa.C.S. § 702. On the contrary, the trial court specifically stated that it would make the custody determination at a later date. The court's custody determinations in the February 25, 2015 order are only interim as all claims

- 10 -

have not been decided. Therefore, we agree with the trial court that this appeal is interlocutory.

Because of our disposition of this preliminary matter, we will not address Mother's remaining issues.

Appeal quashed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/31/2015