J-A22010-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| C.M. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| A. & M.B. | |
| Appellee | No. 619 MDA 2016 |

Appeal from the Order Entered March 18, 2016
In the Court of Common Pleas of Cumberland County
Civil Division at No(s): 14-4411

BEFORE:  GANTMAN, P.J., PANELLA, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                **FILED SEPTEMBER 01, 2016**

Appellant C.M. ("Mother") appeals from the order entered March 18, 2016 in the Cumberland County Court of Common Pleas, which granted partial legal and primary physical custody of Mother's biological child, N.M. ("Child"), to Appellees A.B. ("Step-grandmother") and M.B. ("Step-grandfather") (collectively "Step-grandparents").[1]  We affirm.

The relevant facts and procedural history of this appeal are as follows. Mother, who was born in 1977, wrote a letter to Step-grandparents, asking them to allow her to come stay with them, because she was pregnant, the father of the child was not in the picture, and she needed assistance.  Step-

_____

[1] Step-grandfather was married to Mother's biological mother when Mother was born, and Mother considers Step-grandfather to be her father.

grandparents agreed, and Child was born in January of 2012. In March 2012, Child lived with Step-grandparents for two weeks while Mother received mental health treatment at Roxbury Treatment Center. They all lived together until March 2013, when Mother and Child moved to Kansas and lived there until April 2014. In April 2014, Mother and Child moved back to Step-grandparents' home. On July 18, 2014, Mother and Step-grandmother got into a verbal argument, which resulted in Mother touching Step-grandmother's face. Mother testified she was trying to calm Step-grandmother, while Step-grandmother testified Mother was being violent.[2] Step-grandmother called the police, and Mother was arrested. Mother agreed that Step-grandparents could take care of Child while she was in prison.

Ten days later, on July 28, 2014, Step-grandparents filed a complaint for custody of Child. On July 30, 2014, the court scheduled a conciliation conference for August 26, 2014. Also on July 30, 2014, Step-grandmother filed a protection from abuse ("PFA") action against Mother.

_____

[2] Mother and Step-grandmother have not gotten along well for many years. In addition to bickering, there was an incident in which Step-grandparents picked up Mother from the airport, Mother fell asleep, then awoke in the back seat and attempted to strangle them both. She does not remember this. She claims that she was taking Xanax and Haldol (as prescribed by her doctor), which caused her to occasionally black out. She is now on a different combination of medications for her depression and anxiety.

On September 16, 2014, the court conducted a conciliation conference.[3] Mother was not represented by counsel. On September 22, 2014, the court granted partial legal and primary physical custody of Child to Step-grandparents. The order granted Mother partial supervised visitation, which permitted her to see Child from 4:00 p.m. to 7:00 p.m. one night per week in a community setting. The order did not analyze the custody factors and allowed the parties to modify the provisions of the order by mutual consent. After a status hearing on December 16, 2014, while Mother was still without counsel, the court issued a nearly identical custody order on January 5, 2015 that provided the date for another conciliation conference.

On April 15, 2015, counsel entered appearance for Mother. On May 23, 2015, the court conducted another conciliation conference. On May 27, 2015, the court expanded Mother's visitation to unsupervised partial custody for three hours on Fridays and Sundays through June 7, 2015. The court scheduled another status conference by phone for Friday June 12, 2015.

On June 11, 2015, Mother filed preliminary objections to Step-grandparents' standing, asserting that Mother and Child lived together at all times from Child's birth through July 18, 2014, when Mother was arrested, excluding a two-week period when Mother was in Roxbury Treatment Center.

---

[3] The conference was delayed from the original date.

On December 2, 2015, after a hearing, the court denied Mother's preliminary objections. On March 18, 2016, the court entered the custody order that is the subject of this appeal granting shared legal and primary physical custody of Child to Step-grandparents with Mother having unsupervised overnight visitation three weekends per month. The March 18, 2016 order also appointed a guardian ad litem and scheduled a progress hearing on Mother's employment, mental health, and housing status for June 16, 2016. On April 14, 2016, Mother filed a notice of appeal from the March 18, 2016 order and the December 2, 2015 order dismissing her preliminary objections. Mother simultaneously filed a Pa.R.A.P. 1925(b) statement.

On May 17, 2016, this Court ordered Mother to show cause why the appeal should not be quashed as interlocutory. Mother filed a response on May 23, 2016, asserting that the March 18, 2016 order was the first court determination of custody in this matter, and that it is final notwithstanding the scheduled progress hearing. On June 3, 2016, this Court discharged the order to show cause and referred the issue of appealability to this merits panel.

Mother raises the following issues for our review:

> 1. DO [STEP-GRANDPARENTS] (WHO CLAIM THE STATUS OF GRANDPARENTS) LACK STANDING BASED ON IN LOCO PARENTIS STATUS UNDER 23 PA.C.S[.] § 5324(2) WHERE [MOTHER] AND [CHILD] WERE TOGETHER DURING THE PERIODS THEY LIVED IN [STEP-GRANDPARENTS'] HOME AND BOTH LIVED SEPARATE AND APART FROM [STEP-GRANDPARENTS] FOR OVER A YEAR, AND THEN AGAIN LIVED TOGETHER FOR THREE MONTHS UNTIL MOTHER

WAS FORCIBLY SEPARATED FROM HER CHILD ON JULY 17, 2014 AND [STEP-GRANDPARENTS] RETAINED CUSTODY AFTER THAT DATE THROUGH COURT PROCEEDINGS IN DEFIANCE OF [MOTHER'S] WISHES?

2. DO [STEP-GRANDPARENTS] LACK STANDING TO SEEK CUSTODY UNDER 23 PA.C.S.[.] § 5324(3) BECAUSE [STEP-GRANDMOTHER] HAS NO BIOLOGICAL RELATIONSHIP TO [MOTHER] AND WAS NEVER IN LOCO PARENTIS TO [MOTHER] DURING HER CHILDHOOD, AND THE OTHER REQUIREMENTS FOR A GRANDPARENT TO HAVE STANDING WERE NOT MET BY EITHER [STEP-GRANDPARENT]?

3. DID [STEP-GRANDPARENTS] FAIL TO PRESENT CLEAR AND CONVINCING EVIDENCE TO OVERCOME [MOTHER]'S PRIMA FACIE RIGHT TO LEGAL AND PHYSICAL CUSTODY OF [CHILD] WHERE THERE IS NO EVIDENCE OF PHYSICAL ABUSE OR IMPROPER CARE OF THE CHILD AND [MOTHER] WAS FORCIBLY SEPARATED FROM HIM ON JULY 17, 2014?

Appellant's Brief at 7.

Preliminarily, we observe:

"The appealability of an order directly implicates the jurisdiction of the court asked to review the order." **Estate of Considine v. Wachovia Bank**, 966 A.2d 1148, 1151 (Pa.Super.2009). "[T]his Court has the power to inquire at any time, *sua sponte,* whether an order is appealable." **Id.; Stanton v. Lackawanna Energy, Ltd.,** 915 A.2d 668, 673 (Pa.Super.2007). Pennsylvania law makes clear:

[A]n appeal may be taken from: (1) a final order or an order certified as a final order (Pa.R.A.P. 341); (2) an interlocutory order as of right (Pa.R.A.P. 311); (3) an interlocutory order by permission (Pa.R.A.P. 312, 1311, 42 Pa.C.S.A. § 702(b)); or (4) a collateral order (Pa.R.A.P. 313).

**Stahl v. Redcay**, 897 A.2d 478, 485 (Pa.Super.2006), *appeal denied,* 918 A.2d 747 (Pa.2007) (quoting **Pace v. Thomas Jefferson University Hosp.,** 717 A.2d 539, 540 (Pa.Super.1998) (internal citations omitted)). Pennsylvania

Rule of Appellate Procedure 341 defines "final orders" and states:

**Rule 341. Final Orders; Generally**

**(a) General rule.** Except as prescribed in subdivisions (d), and (e) of this rule, an appeal may be taken as of right from any final order of an administrative agency or lower court.

**(b) Definition of final order.** A final order is any order that:

(1) disposes of all claims and of all parties; or

(2) is expressly defined as a final order by statute; or

(3) is entered as a final order pursuant to subdivision (c) of this rule.

**(c) Determination of finality.** When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim ... the trial court ... may enter a final order as to one or more but fewer than all of the claims ... only upon an express determination that an immediate appeal would facilitate resolution of the entire case. Such an order becomes appealable when entered. In the absence of such a determination and entry of a final order, any order ... that adjudicates fewer than all the claims ... shall not constitute a final order. ...

Pa.R.A.P. 341(a)–(c). Under Rule 341, a final order can be one that disposes of all the parties and all the claims, is expressly defined as a final order by statute, or is entered as a final order pursuant to the trial court's determination under Rule 341(c). Pa.R.A.P. 341(b)(1)–(3); *In re N.B.*, 817 A.2d 530, 533 (Pa.Super.2003).

*In re Estate of Cella*, 12 A.3d 374, 377-78 ([Pa.Super.]2010).

Furthermore, a custody order is considered final and appealable only if it is both: (1) entered after the court has completed its hearings on the merits; and (2) intended by the court to constitute a complete resolution of the custody

claims pending between the parties. *G.B. v. M.M.B.*, 670 A.2d 714, 720 ([Pa.Super.]1996).

*Moyer v. Gresh*, 904 A.2d 958, 963-64 (2006).

Further, we can raise the issue of standing *sua sponte*:

Generally, in the context of statutory causes of action, "[w]hen our legislature has designated who may bring an action under a particular statute, a court does not have jurisdiction over the action unless the party bringing the action has standing." *In re Adoption of W.C.K.*, 748 A.2d 223, 228 (Pa.Super.2000).

*K.B. II v. C.B.F.*, 833 A.2d 767, 774 (Pa.Super.2003).

[W]hen a statute creates a cause of action and designates who may sue, the issue of standing becomes interwoven with that of subject matter jurisdiction. **Standing then becomes a jurisdictional prerequisite to an action.** It is well-settled that the question of subject matter jurisdiction may be raised at any time, by any party, or by the court *sua sponte.*

[*Grom v. Burgoon*, 672 A.2d 823, 824-25 (Pa.Super.1996)] (citations omitted) (emphasis added). In *Grom,* the appellant alleged that the trial court erroneously raised the issue of standing *sua sponte.* The appellant was a grandparent seeking visitation rights of a child pursuant to the custody and grandparents visitation statute, 23 Pa.C.S. § 5313. There, this Court concluded that, because Section 5313 creates a cause of action for grandparent visitation and specifies who may bring an action under its provisions, standing was a prerequisite for jurisdiction. *Id.* at 825. Accordingly, we held that the trial court properly considered the question of standing *sua sponte. Id.*

*K.B. II*, 833 A.2d at 774 (considering question of standing because trial court should have considered whether grandparents had standing to bring the action under the statute).

In its March 18, 2016 order, the trial court granted Step-grandparents primary physical custody and joint legal custody of Child based on the factors enumerated in 23 Pa.C.S. § 5328. The court appointed a guardian ad litem and scheduled a hearing on Mother's employment, mental health, and housing status for June 16, 2016.

After Mother appealed, on June 16, 2016, the court amended the custody order to give Mother an additional weekday overnight as negotiated by the guardian ad litem. It further directed that a hearing to review Mother's status would be held September 1, 2016.

Although, in the March 18, 2016 custody order, the court scheduled a future hearing, it also made a custody determination after conducting a hearing. The order is a final determination, because it granted a party primary custody and determined that party had standing to file for custody. While the arrangement might change slightly, Appellant can properly challenge standing at this point.

In her combined issues, Mother argues that Step-grandparents lack standing to bring a custody complaint against Mother, because Mother has lived with Child since his birth, and Step-grandparents have only acted as grandparents. She further contends that the court erred in determining Step-grandparents had standing, because it based its decision on the time Step-grandparents spent with Child after they filed a complaint in custody, at which point they had only been caring for Child exclusively for ten days.

She further claims Step-grandparents lack standing under Section 5324(3), because they are not the natural grandparents of Child, Child is not a dependent child, and Child is not substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity.

Our scope and standard of review of a custody order are as follows:

> [T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it…. However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination.... Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

> \* \* \*

> [O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses. The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*A.V. v. S.T.*, 87 A.3d 818, 820 (Pa.Super.2014) (quoting *R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa.Super.2009)).

> Although matters of standing may involve factual questions, [if] the essential facts were uncontested…the issue [would be] resolved as a question of law, over which our review is plenary. *… See also In re L.C., II,* 900 A.2d

at 380 (treating similar issue of grandparent standing under the Juvenile Act as "largely one of statutory interpretation" over which "our review is plenary.")

*In re B.S.*, 923 A.2d 517, 520–21 (Pa.Super.2007).

"Absent a prima facie right to custody, a third party lacks standing to seek custody as against the natural parents." *Gradwell v. Strausser*, 610 A.2d 999, 1002 (Pa.Super.1992).

> There is a stringent test for standing in third-party suits for visitation or partial custody due to the respect for the traditionally strong right of parents to raise their children as they see fit. The courts generally find standing in third-party visitation and custody cases only where the legislature specifically authorizes the cause of action. A third party has been permitted to maintain an action for custody, however, where that party stands *in loco parentis* to the child. [ ].

> *[I]n loco parentis* is a legal status and proof of essential facts is required to support a conclusion that such a relationship exists. Furthermore, the phrase "*in loco parentis*" refers to a person who puts oneself in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption. **The status of in loco parentis embodies two ideas; first, the assumption of a parental status, and, second, the discharge of parental duties.** The rights and liabilities arising out of an *in loco parentis* relationship are, as the words imply, exactly the same as between parent and child. The third party in this type of relationship, however, can not place himself *in loco parentis* in defiance of the parents' wishes and the parent/child relationship.

> The *in loco parentis* basis for standing recognizes that the need to guard the family from intrusions by third parties and to protect the rights of the natural parent must be tempered by the paramount need to protect the child's best interest. Thus, while it is presumed that a child's best interest is served by maintaining the family's privacy and autonomy, that presumption must give way where the

child has established strong psychological bonds with a person who, although not a biological parent, has lived with the child and provided care, nurture, and affection, assuming in the child's eye a stature like that of a parent. Where such a relationship is shown, our courts recognize that the child's best interest requires that the third party be granted standing so as to have the opportunity to litigate fully the issue of whether that relationship should be maintained even over a natural parent's objections.

*Morgan v. Weiser*, 923 A.2d 1183, 1187 (Pa.Super.2007) (internal citations omitted) (emphasis added).

### § 5324. Standing for any form of physical custody or legal custody

The following individuals may file an action under this chapter for any form of physical custody or legal custody:

(1) A parent of the child.

(2) A person who stands in loco parentis to the child.

(3) A grandparent of the child who is not in loco parentis to the child:

(i) whose relationship with the child began either with the consent of a parent of the child or under a court order;

(ii) who assumes or is willing to assume responsibility for the child; and

(iii) when one of the following conditions is met:

(A) the child has been determined to be a dependent child under 42 Pa.C.S. Ch. 63 (relating to juvenile matters);

(B) the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity; or

(C) the child has, for a period of at least 12 consecutive months, resided with the grandparent, excluding brief temporary absences

of the child from the home, and is removed from the home by the parents, in which case the action must be filed within six months after the removal of the child from the home.

23 Pa.C.S. § 5324.

In any event, the *paramount* concern in both custody and visitation cases, including those in which grandparents are seeking rights, is the best interests of the child. ***Norris, supra***, 619 A.2d at 340. "[T]he goal in each case is to foster those relationships which will be meaningful for the child, while protecting the child from situations which would have a harmful effect." ***Miller, supra***, 478 A.2d at 453 (Pa.Super.1984) (quoting, 500 Pa. at 260, 455 A.2d at 1182). Factors to consider in determining the best interests of the child include the child's "physical, intellectual, emotional and spiritual well-being." ***Johnson, supra***, 589 A.2d at 1164. Section 5311 requires that the trial court perform a detailed, child-centered analysis when crafting its order granting partial custody to grandparents. ***Id.***

***Douglas v. Wright,*** 801 A.2d 586, 591 (P.Super.2002).

The trial court did not abuse its discretion in finding Step-grandparents had *in loco parentis* standing to bring the custody action. The trial court was free to find Step-grandparents' testimony more credible than Mother's and believe that they provided exclusive care for Child. The court found Step-grandparents provided Child with the necessities of life, including "food, shelter, clothing, diapers, basic grooming, medical care, transportation and…educational arrangements" while Child and Mother lived with them. The court found that Mother allowed Step-grandparents to provide this care. The court further reasoned:

[Step-grandparents] served as more than a mere caretaker or babysitter, including exercising an

- 12 -

uninterrupted period of primary physical custody over Child since September 22, 2014. In light of that fact, and the fact that [Step-Grandparents] have provided for the basic needs of the Child for the majority of Child's life, [Step-grandparents] clearly have standing *in loco parentis*.

Trial Court Opinion and Order of Court denying Mother's preliminary objections ("PO Opinion"), filed December 2, 2015, at 4. The trial court recognized that the need to guard the family from third party intrusions and to protect the rights of the natural parent must be "tempered by the paramount need to protect the child's best interest." Trial Court 1925(a) Opinion, filed May 11, 2015, at 6 (quoting **T.B. v. L.R.M.** 786 A.2d 913, 917(Pa.2001)). Although Step-grandparents did not provide uninterrupted primary physical custody before the trial court ordered them to do so, the court found that they provided the necessities of life to Child while Child and Mother lived with them. Thus, the trial court's conclusion that Step-grandparents acted *in loco parentis* to Child by assuming the obligations incident to the parental relationship is reasonable.

Moreover, Step-grandparents have standing under 23 Pa.C.S. § 5324(3)(iii)(B). In its opinion denying Mother's preliminary objections, the trial court did not consider whether Step-grandparents have grandparent standing under 23 Pa.C.S. § 5324(3)(iii)(B), because it found this point to be moot. However, in its Pa.R.A.P. 1925(a) opinion, the trial court states that it found Child was "substantially at risk due to parental abuse, neglect, drug

- 13 -

or alcohol abuse or incapacity" from the testimony at the hearing on Mother's preliminary objections:

> The uncontroverted testimony at the hearing in this matter indicates that [Mother] has a history of drug abuse, as well as mental health issues. [Mother] heard voices and hallucinated, was prone to misusing her medications, and committed violent acts against others either without provocation or with minimal provocation. As recently as October 2014[,] [Mother] received in-patient treatment for drug rehabilitation purposes. [Mother's] history of drug and alcohol abuse, mental health problems and violent conduct clearly place Child at substantial risk. While to the best of the Court's knowledge[, Mother] has not, to date, injured Child, [Mother] also has not, to the best of the court's knowledge, ever resided alone with Child for a significant amount of time. In the past, [Mother] demonstrated behavior that did directly put Child at risk. This [c]ourt is not willing to gamble that [Mother] is at a point in her life where she can safely exercise sole legal and physical custody, especially given that [Mother] previously depended on [Step-grandparents] to provide the overwhelming majority of care for Child.

Trial Court Pa.R.A.P. 1925(a) Opinion at 13 (citations to the record omitted).

Thus, not only do Step-grandparents have *in loco parentis* standing to bring this custody dispute, but they also have standing under 23 Pa.C.S. § 5324(3)(iii)(B).

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/1/2016