J-S25041-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| Y.E. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| R.M.M. | : | |
| | : | |
| Appellant | : | No. 1940 MDA 2019 |

Appeal from the Order Entered October 25, 2019
In the Court of Common Pleas of Lancaster County
Domestic Relations at No(s): 2019-00171,
PACSES: 917116061

BEFORE: LAZARUS, J., DUBOW, J., and KING, J.

MEMORANDUM BY KING, J.: **FILED JULY 29, 2020**

Appellant, R.M.M., appeals from the order entered in the Lancaster County Court of Common Pleas, which found Appellant to be the father of S.M. ("Child") via the doctrine of paternity by estoppel and ordered Appellant to pay child support and arrears to Appellee, Y.E. For the following reasons, we reverse.

The relevant facts and procedural history of this case are as follows. The parties married in March 1996. Appellee gave birth to Child in March 2016. Following Child's birth, Appellant signed an acknowledgment of paternity form. The parties separated shortly thereafter in June 2016, and divorced in October 2018. The parties continued to live together, however, until February 2019. On January 23, 2019, Appellee filed a *pro se* complaint for child support against Appellant. Following a support conference before a

domestic relations officer on February 22, 2019, the court entered an interim order on March 1, 2019, requiring Appellant to pay Appellee $529.15 per month in child support, plus $52.00 per month in arrears. Appellant subsequently filed a *pro se* appeal for a trial *de novo*, and the court scheduled a *de novo* support hearing for July 12, 2019.

At the July 12th hearing, Appellant contested his paternity of Child. A Spanish interpreter was present at the hearing and provided translation services for both Appellant and Appellee. Appellant testified that the hospital employee who had him sign the acknowledgement of paternity form only spoke English and did not explain the significance of the form to him. (**See** N.T. Hearing, 7/12/19, at 7). Appellant explained that it was difficult to tell if Child was his at the time of her birth, but he later came to realize Child did not resemble him as she grew older. (**Id.**) Appellant testified that he and Appellee divorced in October 2018 because Appellee was "unfaithful." (**Id.**). Appellant explained that he and Appellee continued to live together until February 2019, when Appellee changed the locks on their home. (**Id.** at 7-8). Since their separation, Appellant stated that he has seen Child and has taken her "to parks, to stores," but clarified that he has "no authority towards…[C]hild…because [Appellee] and her partner don't allow it…." (**Id.** at 8).

Appellee also testified at the hearing. Appellee stated that since their separation, Appellant "doesn't even go and see…[C]hild, nothing." (**Id.** at 9).

Appellee stated that in the past three months, Appellant has seen Child "[o]nly a few" times. (*Id.* at 11). Appellee admitted that she does not have any custody agreement with Appellant concerning Child. (*Id.*) Significantly, Appellee agreed that Appellant is not Child's biological father and explained that Child's biological father does not see Child. (*Id.* at 9-13).

On July 18, 2019, the court entered an order requiring Appellant to submit to a paternity test and scheduling an additional hearing following receipt of the test results. On August 26, 2019, the DNA test result report was filed. The report confirmed that Appellant is not Child's biological father.

The court held the follow-up hearing on October 22, 2019. The parties appeared *pro se* and testified via an interpreter. At the hearing, Appellant testified that he signed the acknowledgement of paternity form "[b]ecause [Child] was born while we were married and [Appellant] wasn't aware of what was going on." (*See* N.T. Hearing, 10/22/19, at 3). Appellant stated that he sees Child "[a]lmost every weekend" for "eight to nine hours," and that Child calls Appellant "Papa." (*Id.* at 3-5). Appellant further explained that although Child's biological father is not present in Child's life, "the [biological] father of…[C]hild lives in Lancaster also and it creates a lot of confusion…." (*Id.* at 8-9).

Appellee testified that Child's biological father knows he is Child's father, but that he is not involved in Child's life and has never met Child. (*Id.* at 9-10). Appellee further stated, "If [Appellant] doesn't want to be responsible

for [Child], the mandatory situation that she, [Child], has his last name, and we can just erase it and we can get out of this problem." (*Id.* at 11). Appellee concluded that she would like the court to deem Appellant the father of Child because he is a "good man" and a "good father." (*Id.* at 12).

Following the hearing, the court entered an order on October 25, 2019, finding Appellant to be Child's father via the doctrine of paternity by estoppel and ordering Appellant to pay Appellee $495.74 per month in child support, plus $49.00 per month in arrears. Appellant timely filed a notice of appeal on November 22, 2019. On December 6, 2019, the court directed Appellant to file a concise statement of errors complained of on appeal, per Pa.R.A.P. 1925(b); Appellant timely complied on January 3, 2020.

Appellant raises one issue on appeal:

> Did the trial [c]ourt err in finding that paternity by estoppel
> is applicable in this case when both parties agree that
> Appellant is not the biological father of…[C]hild, when the
> identity of the biological father is known to both parties,
> when there is no intact marriage or family to defend, when
> Appellant established, by clear and convincing evidence,
> that he does not understand English and was not aware of
> the contents and the legal implications of the
> acknowledgment of paternity that he signed at the hospital
> following…[C]hild's birth, when Appellant has not sought
> custody rights to…[C]hild, and when Appellant ceased to
> provide emotional and financial support for…[C]hild upon
> learning of Appellee's deception?

(Appellant's Brief at 7).

Appellant argues the trial court erred in applying the doctrine of paternity by estoppel. Appellant concedes that he acted as a parent to Child

- 4 -

for the first three years of her life. Nevertheless, Appellant insists that Appellee misled him to believe he was Child's biological father during this period. Appellant asserts that he did not learn of Appellee's deception until Child grew older and did not bear a resemblance to Appellant. Appellant contends the DNA test provided unequivocal evidence that he is not Child's biological father.

Appellant further avers that he and Appellee are now divorced and are living separately. Appellant maintains that there is no intact marriage through which Appellant should be recognized as Child's father. Furthermore, Appellant alleges both he and Appellee know the identity of Child's biological father, and that Child's biological father should be responsible for financially supporting Child. Appellant concludes the trial court misapplied paternity by estoppel in this case, and this Court must reverse the court's order finding Appellant to be Child's father and requiring him to pay child support. We agree with Appellant's position.

In reviewing matters of child support and cases involving a question of paternity, we will not disturb a trial court order absent an abuse of discretion. ***Vargo v. Schwartz***, 940 A.2d 459, 462 (Pa.Super. 2007).

> An abuse of discretion exists if the trial court has overridden or misapplied the law, or if there is insufficient evidence to sustain the order. Moreover, resolution of factual issues is for the trial court, and a reviewing court will not disturb the trial court's findings if they are supported by competent evidence. It is not enough for reversal that we, if sitting as a trial court, may have made a different finding.

*Id.* (quoting ***Doran v. Doran***, 820 A.2d 1279, 1282 (Pa.Super. 2003)).

Further:

> "The finder of fact is entitled to weigh the evidence presented and assess its credibility." ***Smith v. Smith***, 904 A.2d 15, 20 (Pa.Super. 2006). In so doing, the finder of fact "is free to believe all, part, or none of the evidence and we as an appellate court will not disturb the credibility determinations of the court below." *Id.* (citation omitted).

***Vargo, supra***.

"The presumption of paternity, *i.e.*, the presumption that a child conceived or born during a marriage is a child of the marriage, …is one of the strongest presumptions known to the law." *Id.* at 463 (citation omitted). Because the policy underlying the presumption is the preservation of marriages, "the presumption of paternity applies **only** where the underlying policy to preserve marriages would be advanced by application of the presumption." *Id.* (emphasis in original). Thus, the presumption of paternity is not applicable when there is no longer an intact family or a marriage to preserve. *Id.* If the presumption of paternity is inapplicable, the court must then consider whether the doctrine of paternity by estoppel applies to the facts of the case. *Id.* at 464.

> "Generally, estoppel in paternity issues is aimed at achieving fairness as between the parents by holding both mother and father to their prior conduct regarding paternity of the child." ***Buccieri v. Campagna***, 889 A.2d 1220, 1224 (Pa.Super. 2005) (quoting ***Freedman v. McCandless***, 539 Pa. 584, 592, 654 A.2d 529, 533 (1995)). This Court has held that the principle of paternity by estoppel is well suited to cases where no presumption of paternity applies. ***Gulla v. Fitzpatrick***, [596 A.2d 851, 858 (Pa.Super. 1991)]. The

number of months or years a party held out another as the father of a child is not determinative of an estoppel claim. ***Id.*** "Rather, it is the nature of the conduct and the effect on the father and the child and their relationship that is the proper focus of our attention." ***Id.***

Estoppel has been used variously in cases involving paternity and support. ***See, e.g., Fish v. Behers***, 559 Pa. 523, 741 A.2d 721 (1999) (holding as between mother and biological father, mother was estopped from asserting paternity of biological father, where she repeatedly assured her ex-husband that he was child's biological father); ***Moyer v. Gresh***, 904 A.2d 958 (Pa.Super. 2006) (holding as between putative father and biological father, biological father was estopped from challenging paternity of putative father where putative father raised child for nine years); ***Buccieri, supra*** (holding biological father was estopped from asserting paternity due to eight-year delay in accepting any responsibility as parent); ***J.C. v. J.S.***, 826 A.2d 1, 5 (Pa.Super. 2003)[, *appeal denied*, 576 Pa. 724, 841 A.2d 531 (2003)] (holding putative father was estopped from denying paternity because he continued to act as child's father after his paternity was disproved); ***Gulla, supra*** (holding as between mother and putative father, mother was estopped from denying paternity of putative father where she had held him out as child's father). Even in the context of a marriage, the principle of estoppel can be applied if fraud occurs. ***See also Doran, supra*** (holding husband was not estopped from denying paternity of child born during husband's marriage to mother, where she deceived him into believing he was child's biological father); ***Kohler***[ ***v. Bleem***, 654 A.2d 569 (Pa.Super. 1995), *appeal denied*, 541 Pa. 652, 664 A.2d 541 (1995)] (holding biological father could not assert estoppel to prevent presumptive father from denying paternity, in light of conclusive evidence of paternity, fraud and misrepresentation on issue of true identity of biological father, and absence of intact family).

\* \* \*

"Estoppel in paternity actions is based on the public policy that children should be secure in knowing who their parents are…." ***Gebler v. Gatti***, 895 A.2d 1, 3 (Pa.Super. 2006)

- 7 -

(citing **Brinkley v. King**, 549 Pa. 241, 701 A.2d 176 (1997)). "The doctrine is designed to protect the best interests of minor children by allowing them to 'be secure in knowing who their parents are.'" **Moyer, supra** (internal citation omitted). The application of paternity by estoppel in any form is very fact specific and must be grounded in a close analysis of the circumstances of the case. **Gebler, supra** (citing **T.L.F. v. D.W.T.**, 796 A.2d 358, 363 (Pa.Super. 2002)); **Matter of Green**, [650 A.2d 1072, 1075 (Pa.Super. 1994)]. The length of time involved is only one circumstance to be considered. **Gulla, supra**. This Court has also considered society's concerns for stability in the child's life, such as whether there is a stable family unit to preserve. **Buccieri, supra**. An additional factor is whether the child's father "is willing to care [for the child]…and capable of doing so…." **Moyer, supra** at 963.

**Conroy v. Rosenwald**, 940 A.2d 409, 416-17 (Pa.Super. 2007).

Instantly, in its Rule 1925(a) opinion, the trial court explained that it reconsidered its original decision, and now agrees with Appellant that the doctrine of paternity by estoppel does not apply here. The court reasoned:

> The facts presented to the court are difficult ones. [Appellant] has stood in the role of a father to…[C]hild for over three years. He loves…[C]hild, is called "papa" by …[C]hild, and spends time with…[C]hild. [Appellee] believes he is a good man who has been a good father to…[C]hild. Do these facts require the court to declare [Appellant] to be …[C]hild's father by estoppel?
>
> The child was born when the parties were married and living as an intact family,[1] but they are no longer together and have no intention of reconciling. Not only was…[C]hild born during the marriage, but [Appellant] signed an acknowledgement of paternity. [Appellant] was credible in his testimony that he was both unaware of the contents of the acknowledgement of paternity and of the fact that…[C]hild was not his. Title 23 Pa.C.S.A. § 5103 provides:
>
>> (2)   After the expiration of the 60 days, an

- 8 -

acknowledgment of paternity may be challenged in court only on the basis of fraud, duress or material mistake of fact, which must be established by the challenger through clear and convincing evidence. An order for support shall not be suspended during the period of challenge except for good cause shown.

23 Pa.C.S.A. § 5103(g)(2). [Appellant] has established by clear and convincing evidence that he does not understand English and was not aware of the contents of the acknowledgement he signed, as well as that he was [un]aware of the child not being his. Based upon these facts, the court finds he signed the acknowledgment based on a mistake of fact and permits him to revoke it. That, however, does not end the analysis. The court must determine if [Appellant] should be declared the child's father by estoppel.

[1] The presumption of paternity applies to situations in which there is an intact marriage to be protected. Such is not the case here.

…Here…there is no intact marriage through which [Appellant], as the husband of [Appellee], should be recognized as her child's father. Since separation, though he has seen…[C]hild, [Appellant] has not sought custody rights to…[C]hild. There is no tie he has with…[C]hild other than his good will towards her.

…[Appellant] had acted as father to…[C]hild for three years prior to his separation from [Appellee]. Once separated, he continued to occasionally see…[C]hild, but never for an overnight. …[C]hild's biological father, while playing no role in her life presently, is known within the community and known to both [Appellee] and [Appellant]. The court must determine, on the facts provided, whether declaring [Appellant] to be…[C]hild's father by estoppel is in…[C]hild's best interest.

\* \* \*

The legal fiction of paternity by estoppel retains its greatest force where there is truly an intact family. That is not the case between the parties. …[C]hild was fortunate to have

- 9 -

> [Appellant] step in as a father figure for the first three years of her life, but the obligation of support and responsibility of fatherhood must lie with the biological father. Upon careful reconsideration, the court believes it erred to declare [Appellant] to be…[C]hild's father by estoppel.

(*See* Trial Court Opinion, filed December 18, 2019, at 3-6). We agree with the court's analysis.

The record here shows that the parties married in 1996. Around the time of Child's conception, Appellee engaged in an extramarital affair. Appellee did not inform Appellant of the affair. In March 2016, Appellee gave birth to Child, and Appellant signed an acknowledgment of paternity form believing he was Child's biological father. For the next few years, Appellant treated Child as his own. The parties divorced in October 2018, and Appellant moved out of the marital home in February 2019, after Appellee changed the locks. Since their separation, Appellant has continued to see Child on occasion, but has not sought custody or otherwise attempted to maintain his parental role in Child's life. Additionally, there is no evidence that the parties intend to reconcile.

As there is no intact family unit to preserve, the presumption of paternity does not apply in this case. *See Vargo, supra*. Under the facts of this case, the doctrine of paternity by estoppel is also inapplicable. *See N.C. v. M.H.*, 923 A.2d 499 (Pa.Super. 2007) (holding doctrine of paternity by estoppel was inapplicable where appellant operated for over ten years under false pretense that he was child's father due to mother's failure to inform

appellant of extramarital affair she had around time of child's conception);

***Gebler, supra*** (holding trial court erred in applying doctrine of paternity by estoppel where appellant's behavior as responsible father for first eighteen months of child's life was due to mother's concealment of existence of other sexual partners around time of child's conception). Based upon the foregoing, we reverse the order finding Appellant to be Child's father via the doctrine of paternity by estoppel and requiring Appellant to pay child support.

Order reversed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/29/2020