J-A15038-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| THE ESTATE OF JOHN ROBERT ROSE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: ARDEN REILLY | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1164 WDA 2022 |

Appeal from the Order Entered September 23, 2022
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  NO-02-21-106

BEFORE:  MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.*

MEMORANDUM BY PELLEGRINI, J.:                    **FILED:  August 17, 2023**

In this intestate succession case, Arden Reilly (Reilly) petitioned to be the son and intestate heir of John Robert Rose (Decedent).  Decedent's estate filed preliminary objections asserting, among other things, that Decedent was not Reilly's father.  The Court of Common Pleas of Allegheny County (orphans' court) sustained the preliminary objections and dismissed his petition.  After Reilly filed this appeal, genetic testing confirmed that Decedent was not his natural father.  Undeterred, he argues that our intestate succession laws permit him to be Decedent's heir because Decedent held him out as his son. After review, we affirm.

---

* Retired Senior Judge assigned to the Superior Court.

**I.**

**A.**

Decedent was born in 1953 and had one sister, Judith A. Rose (Sister). He was married once from 1984 to 1986 to a woman named Monica Reilly. During their marriage, she gave birth to a son, Reilly, but the birth certificate did not list Decedent as the father.

On November 25, 2020, Decedent died intestate and unmarried in Pittsburgh. On January 7, 2021, Sister filed a petition for grant of letters of administration with the Register of Wills of Allegheny County. In her petition, Sister averred that she was Decedent's sister and sole heir and that she was renouncing her right to administer her brother's estate in favor of Attorney Thomas Dempsy, Jr. Accordingly, the register of wills granted letters of administration to Attorney Dempsey that same day.

At the time that the letters were issued, Decedent's body was still being held at the Allegheny County Medical Examiner's Office. As a result, on January 20, 2021, Attorney Dempsey petitioned for Decedent's remains to be released to Sister because she and not Reilly was Decedent's closest relative by blood. In support of this assertion, Attorney Dempsey pointed to two emails that Reilly sent to the medical examiner's office in which he admitted that a man named Paul Stevens and not Decedent was his biological father. On January 29, 2021, the orphans' court granted the petition and ordered that

the remains be released to Sister for funeral arrangements.[1]  On March 11, 2021, Sister's ex-husband, Thomas Marotta (Administrator), was substituted as the estate's administrator.

On December 23, 2021, Reilly petitioned for a citation to show cause why he should not be Decedent's interstate heir.  In his petition, Reilly asserted that he was Decedent's heir because Decedent was married to his mother when he was born and held him out as his son both during and after the marriage.  For support, Reilly relied on Section 2107 of Pennsylvania's Decedents, Estates and Fiduciaries Code (PEF Code).  Under that section, a child born out of wedlock can be considered the child of a father when there is clear and convincing evidence that during the child's lifetime, "the father openly holds out the child to be his and receives the child into his home, or openly holds the child out to be his and provides support for the child."  20 Pa.C.S. § 2107(c)(2).  Even though Section 2107 applied to children born out of wedlock, Reilly argued that the section "can only serve to create an even stronger presumption under which a child born of wedlock may inherit," since "[s]urely the drafters of the PEF Code would not intend that a child born during

---

[1] The orphans' court's order also directed that Reilly receive notice of any arranged funeral services.

a marriage, of wedlock, have less right to inherit from their father than a child born out of wedlock."[2]

On February 9, 2022, Administrator filed preliminary objections raising three grounds for dismissal of Reilly's petition: (1) that Reilly had failed to timely appeal within one year from the January 7, 2021 grant of letters of administration as required by Section 908 of the PEF Code;[3] (2) that Reilly's petition named only Administrator as a respondent, thus failing to join Sister as an indispensable party; and (3) that Reilly admitted that Decedent was not his natural father.

Reilly responded on March 1, 2022. Addressing first whether he needed to appeal from the grant of letters of administration, Reilly argued that such an appeal was not necessary because he was contesting only Sister's status as sole heir and not the grant of letters of administration; that his petition was filed less than one year after the original grant of letters of administration; and that the register of wills had granted new letters of administration on

---

[2] Petition for Citation, 12/23/21, ¶¶ 13-14.

[3] Under Section 908(a), "[a]ny party in interest seeking to challenge the probate of a will or who is otherwise aggrieved by a decree of the register … may appeal therefrom to the court within one year of the decree." 20 Pa.C.S. § 908(a). Administrator contended that Reilly's petition was not an appeal from the original decree of the register of wills but instead a separate and declaratory judgment action to establish a filial relationship with Decedent. **See** Administrator's Preliminary Objections, 2/9/22, ¶ 50.

March 19, 2021, that could be appealed until March 19, 2022.[4]  As for the indispensable party issue, Reilly asserted that his petition sought relief from Administrator and not Sister, and that the attorney for Administrator who was served with the petition and citation had already appeared as Sister's counsel. Last, Reilly asserted that it was not yet known whether he was Decedent's natural son because genetic testing was not performed during Decedent's lifetime, and that he should still be permitted to prove that he is Decedent's heir under Section 2107 because he was born during Decedent's marriage to his mother and Decedent held him out as his son.

On June 30, 2022, Reilly filed a supplemental response requesting discovery and an evidentiary hearing on the issue of whether he is Decedent's son.  Administrator moved to strike Reilly's supplemental response because he did not obtain Administrator's approval.  Reilly, in turn, responded by asserting, among other things, that he was, in fact, Decedent's biological son. At argument on the preliminary objections, Reilly argued that until paternity testing was conducted, an evidentiary hearing was necessary.  However, if paternity testing showed that he was not Decedent's natural son, Reilly

_____

[4] While not conceding the merit of Administrator's claims, on March 18, 2022, Reilly refiled his petition for citation to show cause why petitioner should not be an intestate heir as a petition for appeal of the register of wills' March 19, 2021 grant of letters of administration, which he served on both Administrator and Sister.

conceded that would "end the case" and there would be no dispute about Reilly's parentage.

On September 23, 2022, the orphans' court sustained the preliminary objections and dismissed with prejudice Reilly's petition. In its supporting opinion, the orphans' court agreed with Administrator that Reilly had violated Section 908 of the PEF Code by failing to file a timely appeal within one year from the decree of the register of wills that Sister was Decedent's sole heir. The orphans' court also found that Reilly's failure to name Sister as a respondent was fatal to his petition. As for whether Reilly was Decedent's son, the orphans' court credited Reilly's prior admission and found that Reilly knew that Decedent was not his natural father, thus establishing that he could not be considered his "issue" under our intestate succession laws.

**B.**

Reilly timely appealed on October 7, 2022.[5] After filing his appeal, Reilly moved for reconsideration because, among other reasons, the man alleged to be his natural father, Paul Stevens, was willing to subject himself to genetic testing. Before the results were obtained, however, the orphans' court denied

---

[5] The orphans' court's order was appealable as of right under Pa.R.A.P. 342(a)(5), which permits an appeal from an orphans' court order "determining the status of fiduciaries, beneficiaries, or creditors in an estate, trust, or guardianship[.]"

the motion. Not long after, Reilly obtained the results and learned that Paul Stevens was, in fact, his natural father.

Despite this new information and his prior position that genetic testing would end the case, Riley applied to this Court for a remand to allow discovery and an evidentiary hearing on whether he could be considered Decedent's son under Section 2107. In his application, Reilly asserted (as he does on appeal) that it does matter under that section whether a putative heir is a blood relative of the decedent—if he could prove that Decedent held him out as his son, then he should be Decedent's son and intestate heir regardless of him having a different natural father.[6]

Administrator answered that the results of the genetic testing essentially ended the case because Section 2103 of the PEF Code provides that if a decedent dies without a surviving spouse, then the first class of persons to take the estate is the decedent's "issue." 20 Pa.C.S. § 2103(1). "Issue," in turn, is defined in estate matters as "all lawful, lineal descendants of a common ancestor." 1 Pa.C.S. § 1991. Because "a stranger in blood is not a lineal descendant," **In re Struck's Estate**, 87 A.2d 485, 486 (Pa. 1952), Reilly could not be Decedent's issue.

---

[6] Riley reasserted this argument in response to our January 20, 2023 order directing him to show cause why the appeal should not be quashed or dismissed as moot because of the genetic testing. On February 24, 2023, we discharged the rule to show cause, subject to revisitation of the issue by the merits panel.

After receiving Administrator's answer, we denied the application to remand on March 3, 2023. Both Reilly and the orphans' court have complied with Pa.R.A.P. 1925, and this matter is now ready for review.[7]

**II.**

On appeal, Reilly challenges all three grounds on which the orphans' court sustained the preliminary objections—that is, whether his petition should be dismissed because (1) he failed to timely appeal the grant of letters of administration, (2) he failed to join Sister as an indispensable party, and (3) he is not a natural son of Decedent. While it is not clear that Reilly needed to

---

[7] Our standard of review of a orphans' court order sustaining preliminary objections is well-established:

> In determining whether the [o]rphans' [c]ourt properly [sustained] ... preliminary objections ..., we review the ruling for an error of law or abuse of discretion. On an appeal from an order sustaining preliminary objections, we accept as true all well-pleaded material facts set forth in the appellant's complaint and all reasonable inferences which may be drawn from those facts. Preliminary objections seeking the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief; if any doubt exists, it should be resolved in favor of overruling the objections.

> Threshold issues of standing are questions of law; thus, our standard of review is *de novo* and our scope of review is plenary.

**Rellick-Smith v. Rellick**, 147 A.3d 897, 901 (Pa. Super. 2016) (cleaned up).

- 8 -

style his petition as an appeal from the grant of letters of administration[8] or

dismissal was warranted because he failed to join Sister as an indispensable

party,[9] we need not delve into those issues. Indeed, now that there is no

_____

[8] It is unclear whether the PEF Code requires a putative heir to formally appeal a decision of the register of wills to seek a determination that he is an heir of a decedent, as neither the orphans' court nor the Administrator point us to any case law for such a proposition. Reilly also did not seek to set aside the letters of administration; rather, he sought a determination of his status as an intestate heir. While the decree recited that the administrator was selected based on the "renunciation of Judith A. Rose, sole intestate heir" and "satisfactory proof having been presented," it is unclear whether that operates as an adjudication of an estate's heir that is final and unchallengeable unless the grant of the letters of administration is appealed. Indeed, the jurisdiction of the register of wills is "the probate of wills [and] the grant of letters to a personal representative," not the determination of who is to receive distribution from an estate. *See* 20 Pa.C.S. § 901. Issues of "distribution of the real and personal property of decedents' estates" are within the jurisdiction of the Orphans' Court. *See* 20 Pa.C.S. § 711(1). Section 3521 of the PEF Code, meanwhile, permits review of a decree of distribution if it is filed within five years after the final confirmation of any account of a personal representative. *See* 20 Pa.C.S. § 3521. Thus, for these reasons, Reilley's petition should not be dismissed for failure to formally appeal from the grant of the letter of administration or style his petition as such.

[9] Generally, "an indispensable party is one whose rights are so connected with the claims of the litigants that no decree can be made without impairing its rights." *In re Navarra*, 185 A.3d 342, 349 (Pa. Super. 2018) (citation omitted). While Sister was an indispensable party, she had already appeared and sought relief twice from the orphans' court before Reilly filed his petition. It appears that she may have already been a party and that nothing had to be done to obtain personal jurisdiction over her. Where the court already has personal jurisdiction over a person when a citation is issued, the person may be served with the citation by mail. *See* Pa.R.O.C.P. 3.5(a)(3). Although the citation was not issued to Sister, a citation is not required where personal jurisdiction has already been obtained and the party seeking relief may proceed by filing a petition with a notice to file a response. *See* Pa.R.O.C.P 3.5(b)(1). While Reilly did not initially serve Sister or provide her any notice of his petition, he did mail the petition to her on March 1, 2022, which is would

dispute that Decedent was not Reilly's natural father, we limit our review to the discrete question of whether Reilly can be Decedent's "issue" for intestate succession purposes even though genetic testing has conclusively proven that he has no biological connection to Decedent.

The order of intestate succession to other than a surviving spouse is set forth under Section 2103 of the PEF Code.

> The share of the estate, if any, to which the surviving spouse is not entitled, and the entire estate if there is no surviving spouse, shall pass in the following order:
>
> **(1) Issue.**--To the issue of the decedent.
>
> **(2) Parents.**--If no issue survives the decedent, then to the parents or parent of the decedent.
>
> **(3) Brothers, sisters, or their issue.**--If no parent survives the decedent, then to the issue of each of the decedent's parents.

20 Pa.C.S. § 2103.

"Issue" is defined under the Statutory Construction Act as follows: "As applied to the descent of estates, means all lawful, lineal descendants of a

_____

have been over six months before the orphans' court addressed the petition. Even though Reilly did not comply with Orphans' Court notice requirements, the remedy for an interested party not receiving notice is for it to be sent to that party before the orphans' court acts on the petition, not dismissal of the petition. *See* Pa.R.O.C.P 3.5(b)(3). Here, however, the orphans' court gave no consideration to ordering Reilly to serve the petition on Sister with proper notice or allow him to correct the defect. *See* Pa.R.Civ.P. 1032(b) (remedy for failure to join indispensable party is to order joinder of the indispensable party and dismiss the action only if indispensable party cannot be joined).

common ancestor." 1 Pa.C.S. § 1991. When passing to the decedent's issue, the estate "shall be divided into as many equal shares as there shall be persons in the nearest **degree of consanguinity** to the decedent living and taking shares therein and persons in that degree who have died before the decedent and have left issue to survive him who take shares therein." 20 Pa.C.S. § 2104(1) (emphasis added).

As discussed, Reilly argues that he can prove that he is Decedent's son under Section 2107(c)(2) of the PEF Code. Section 2107, titled "Persons born out of wedlock," provides in relevant part:

> **(c) Child of father.**--For purposes of descent by, from and through a person born out of wedlock, he shall be considered the child of his father when the identity of the father has been determined in any one of the following ways:
>
> (1) If the parents of a child born out of wedlock shall have married each other.
>
> (2) If during the lifetime of the child, the father openly holds out the child to be his and receives the child into his home, or openly holds the child out to be his and provides support for the child which shall be determined by clear and convincing evidence.
>
> (3) If there is clear and convincing evidence that the man was the father of the child, which may include a prior court determination of paternity.

20 Pa.C.S. § 2107(c).

As this Court has explained, "[w]ith the exception of surviving spouses and adopted children, only those heirs in some degree of consanguinity may inherit" under our intestate laws. *See In re Estate of Simmons-Carton*, 644 A.2d 791, 797 n.2 (Pa. Super. 1994). That being the case, "[t]he clear

legislative purpose of § 2107(c) is to provide a means by which children born out of wedlock and those who seek to inherit from or through them can legally establish the requisite degree of consanguinity where paternity is a relevant fact." *Id*.

In *Bahl v. Lambert Farms, Inc.*, 819 A.2d 534 (Pa. 2003), our Supreme Court addressed a similar argument as that raised here. In *Bahl*, William (William Sr.) and Rose Bahl (the Bahls) owned a family farm and had six natural children. In 1921, one of their daughters had a child out of wedlock. To avoid the stigma that would attach to the child born out of wedlock, the Bahls raised the child as their own and called him William Bahl, Jr. ("Willaim Jr."). Although the Bahls never adopted William Jr., the Bahls held him out as their own. When William Sr. passed away in 1945, title to the farm was passed to his wife Rose. Then, when she died in 1969, title passed to the Bahls' surviving children and grandchildren by intestate succession.

In 1991, Lambert Farms purchased the farm from the surviving children, but the deed did not list William Jr., who passed away in 1980, or any of his heirs as a grantor. In 1998, William Jr.'s heirs file an action to partition the farm, alleging that part of the farm was theirs because William Jr. should have been considered the last-born son of the Bahls and inherited one-sixth of the farm by intestate succession. The trial court, however, held that William Jr. could not be the Bahls' child for intestate succession purposes because it credited the testimony that he was not their natural child. On appeal, we

reversed, finding that even though the trial court's factual determination was supported, Lambert Farms was equitably estopped from denying that the Bahls held out William Jr. as their son throughout their lives, citing in support several cases in which the doctrine of paternity by estoppel was used to prevent parents from denying the paternity of minor children.

On discretionary appeal, our Supreme Court reversed, holding that William Jr.'s heirs did not inherit any part of the farm through intestate succession under an estoppel theory. In so doing, the Court laid out how Pennsylvania intestate laws both before and after the PEF Code provide that a decedent's "issue" includes his or her natural children, that is, those related by blood.

> Under the version of the Intestate Act of 1947 that was in effect at the time of Rose's death in 1969, when a mother passed away, leaving no surviving spouse, her property passed to her "issue." 20 P.S. § 1.3 (1950); **see also** 20 Pa.C.S. 2103(1) (2002). Although the statute did not specifically define "issue," it made clear in setting forth the rules of succession that only those with some "degree of consanguinity" to the decedent ordinarily qualified as such. Specifically, the statute provided that in passing to a decedent's issue, the estate "shall be divided into as many equal shares as there shall be persons *in the nearest degree of consanguinity* to the decedent living and persons in that degree who have died before the decedent and have left issue to survive him who take shares therein." 20 P.S. § 1.4(1) (1950) (emphasis added); **see also** 20 Pa.C.S. § 2104(1) (2002). It further emphasized that "[w]hen the persons entitled to take under this chapter other than as a surviving spouse are *all in the same degree of consanguinity* to the decedent, they shall take in equal shares." 20 P.S. § 1.4 (1.1) (1957) (emphasis added); 20 Pa.C.S. § 2104(2) (2002). Thus, when a decedent had living natural children and no surviving spouse, it was the natural children (who are, by definition, in the same degree of consanguinity to the decedent) who shared the estate equally, with the single caveat

- 13 -

that if any natural child predeceased the decedent, his share would be divided among his issue, *i.e.,* the decedent's grandchildren.

***Bahl***, supra at 538 (footnotes omitted).

Based on this analysis, therefore, the Court observed that anyone who was neither the natural nor adopted child of the decedent could not be the decedent's "issue."

> Under these provisions, it is apparent that the General Assembly intended, as a general rule, to limit "issue" to those in the decedent's blood line and ***did not intend to include as first degree "issue" individuals without the requisite consanguinity who had merely been treated like, or held out as, the decedent's children***. (Emphasis added.)

***Id***. Accordingly, holding that the case was "controlled by the clear statutory limitations on inheritance by intestate succession" and finding the doctrine of paternity by estoppel inapplicable,[10] the Court held that William Jr.'s heirs could did not inherit any part of the Bahl family farm even though the Bahls held him out as their son. ***Id***. at 539-41.

Applying ***Bahl***, we conclude that Reilly cannot be deemed Decedent's "issue" under Section 2103 (c) (2) that he was held out as Decedent's son, once, as here, it is conclusively established that Decedent was not his natural

_____

[10] The ***Bahl*** Court found the doctrine of paternity by estoppel inapplicable because the doctrine was generally applied in cases involving support of minor children where the expectations of minor child are at stake and has never been extended to estop a third party like Lambert Farms from challenging paternity. ***See Bahl***, 819 A.2d at 540.

father, that is, there is no degree of consanguinity between the two. As discussed, a decedent's "issue" is defined as the decedent's "lineal descendants" which, according to the plain language of that term, means a decedent who proceeds in direct line by birth from the ancestor and does not include a "stranger in blood." *In re Strunk's Estate*, *supra*. As our Supreme Court explained in *Bahl*, a decedent's "issue" is limited to descendants by blood and does not include persons like Reilly who were merely held out as or treated like a child of the decedent. *See Bahl*, *supra* at 538. Thus, even assuming Reilly presented clear and convincing evidence under Section 2107(c)(2) that Decedent held him as out his son, he cannot be Decedent's "issue" now that there is no factual dispute that Decedent was not his natural father and, consequently, not a blood relative.

Reilly nonetheless contends that his lack of consanguinity with Decedent should not hamper his ability to be Decedent's son under Section 2107(c)(2) since it does not matter under that section whether a father is biologically related to a child. For support of this proposition, Relly cites *Estate of Ackley v. Ackley*, 266 A.3d 604, 2021 WL 4520326 (Pa. Super. October 4, 2021) (unpublished memorandum).[11] There, the decedent was married and had three children. At some point during his marriage, though, the decedent

---

[11] Under amended Pa.R.A.P. 126, non-precedential decisions are not binding but may be cited as "persuasive" authority. *See* Pa.R.A.P. 126(b)(2) (stating that unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

began living with another woman. While the two were living together, the woman gave birth to two daughters, one of them named Brittany. The decedent was listed as Brittany's father on her birth certificate and Brittany used the decedent's surname. Brittany lived with the decedent until she was about nine years old. Several years later, when she moved out of her mother's residence, Brittany lived with the decedent for about five years before moving in with her aunt to finish high school. After high school, Brittany lived another year with the decedent.

After the decedent died intestate, the estate's administrator petitioned to be named administrator. Brittany, in turn, petitioned for production of formal accounting and proposed distribution. The administrator, meanwhile, responded that Brittany was not the decedent's offspring and eventually petitioned for DNA testing of Brittany. The trial court denied testing and after holding an evidentiary hearing, concluded that Brittany presented clear and convincing evidence under Section 2107 proving that she was the decedent's issue.

On appeal, the administrator argued that the trial court erred in denying his request for DNA testing to determine if Brittany was the decedent's issue. Finding no support for the proposition that a trial court erred in denying such a request for genetic testing, we noted that there was nothing in our intestate succession laws for a request for testing. ***Estate of Ackley***, ***supra*** at *2. While agreeing that the degree of consanguinity is the determining factor for

inheritance in an intestate estate distribution under 20 Pa.C.S. § 2104(1), we also observed that Section 2107 allows for proof in three separate ways for "a consanguinity determination that adjudicates whether an individual born out of wedlock is a descendant of a male." *Id*.

We also faulted the administrator's attempt to rely on *In re Estate of Greenwood*, 587 A.2d 749 (Pa. Super. 1991), and *Wawrykow v. Simonich*, 652 A.2d 843 (Pa. Super. 1994). In the former, the potential child of the decedent petitioned for an order requiring the genetic testing of the decedent, while the latter involved a putative heir attempting to establish paternity by exhuming the decedent. Finding both cases inapposite, we observed that it was the administrator and not Brittany that was seeking paternity testing to disestablish that she was not an heir, thus effectively preempting her from proving that she was the decedent's heir. *See Estate of Ackley*, *supra* at *3.

As a result, we found "no basis, statutory or otherwise, to conclude that the Administrator has the inherent ability to seek a DNA test of an individual attempting to demonstrate paternity from a decedent." *Id*. While adding that genetic testing "would be probative (if not effectively conclusive) as to whether Brittany is an heir to the Estate," we nonetheless concluded that there was no authority for the administrator to "offensively seek a DNA sample from a paternity-based estate claimant." *Id*.

After review, we do not read *Estate of Ackley* as Reilly does as standing for the proposition that Section 2107(c) allows for a non-biological, non-adopted child to be an intestate heir. Instead, Section 2107(c)(2) provides a method of proving biological paternity without genetic testing. Thus, as long as a petitioner can present clear and convincing evidence that the decedent father held him as his son, then Section 2107 permits the putative heir born out of wedlock to establish consanguinity even if there has not been paternity testing. In such a situation, as we emphasized in *Estate of Ackley,* the party opposing the putative heir cannot compel the trial court to order genetic testing, as there is no basis in our statutes or case law for such testing to be ordered.

That situation changes, however, where the putative heir chooses to have genetic testing conducted to conclusively establish paternity. Reilly was under no obligation to have such testing performed but nonetheless chose to have it done. By so doing, Reilly has now conclusively proven that Decedent is not, in fact, his natural father. Even if Reilly could sustain his burden of proof under Section 2107(c)(2) and prove that Decedent held him out as his son, his decision to seek genetic testing that confirmed that Decedent was not his natural father has brought an effective end to the case. Accordingly, because he cannot be Decedent's "issue" under Section 2703(1) and supplant Sister as Decedent's intestate heir, we affirm the orphans' court's order

- 18 -

sustaining the preliminary objections and dismissing with prejudice Reilly's petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/17/2023